IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-01086-MSK-NYW

CELEDONIO BAUTISTA, an individual
Plaintiff

v.

MVT SERVICES LLC, a Limited Liability Company
dba MESILLA VALLEY TRANSPORTION [sic] INC.,
THOMAS M. ESTRADA, an individual, and
DOES 1 through 10, inclusive
Defendants

---

**PLAINTIFF CELEDONIO BAUTISTA'S MOTION FOR LEAVE TO AMEND HIS INITIAL EXPERT WITNESS DISCLOSURES AND OPPOSITION TO DEFENDANTS' MOTION TO STRIKE REBUTTAL EXPERT KHYBER ZAFFARKHAN**

---

Plaintiff Celedonio Bautista ("Plaintiff" or "Mr. Bautista") hereby submits the following Motion for Leave to Amend or Augment his Initial Expert Witness Disclosures and as Opposition to Defendants' Motion to Strike Rebuttal Expert Khyber Zaffarkhan [65]. The parties conferred via a phone call, and Defendants oppose the relief requested herein.

1

# **TABLE OF CONTENTS**

I.      INTRODUCTION…………….…………………………....………..1

II.     DR. ZAFFARKHAN'S OPINIONS ARE PROPER AS REBUTTAL
        OPINIONS TO DEFENDANTS' EXPERTS DR. BAZAZ AND DR.
        RHODES.………………………………………………………...…..2

        A.      Standard for Appropriate Rebuttal Expert Witness Opinions.............2

        B.      Dr. Zaffarkhan's Opinions Rebut Those of Dr. Bazaz ………..…….2

        C.      Dr. Zaffarkhan's Opinions Rebut Those of Dr. Rhodes ……..…........4

        D.      Dr. Zaffarkhan's Opinions Should Not be Excluded or Stricken.......5

III.    PLAINTIFF'S REQUEST TO AMEND IS SUBSTANTIALLY
        JUSTIFIED AND HARMLESS TO DEFENDANTS …………………....7

IV.     THERE IS NO PREJUDICE TO DEFENDANTS BECAUSE
        EXPERT DISCOVERY HAS YET TO BE COMPLETED…………….11

IV.     CONCLUSION ………………...…………………..…………………...14

1

## TABLE OF AUTHORITIES

*Cases*

*Basaldu v. Goodrich Corp.*, 2009 WL1160915, *2 (E.D. Tenn. 2009)………..………9

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 2007 WL
4051179, *2 (S.D.N.Y. 2007)…………………………….……..……...9-10

*Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003)…..…….8, 13

*Berry v. Keltner,* 208 P.3d 247 (May 26, 2009)…………………………….…….....7

*Cassirer v. San Miguel County Board of County Commissioners,* 2009 WL
1844326, 5-6 (D. Colo. June 23, 2009)……………………….………..…13

*Heartland Rehab. Serv., Inc. v. Mekjian*, No. 06-11769, 2007 WL 1266352, at *1
(E.D. Mich. May 1, 2007)……………..…………………………………...7

*Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1555 (10th Cir. 1996)………….......13

*Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo. 2004)……………………….......5

*Sherrod v. Lingle,* 223 F.3d 605, 613 (7th Cir. 2000). ………...………………......9

*TC Sys. Inc., v. Town of Colonie, NY*, 213 F.Supp.2d 171, 179 (N.D.N.Y. 2002)..…..2

*Todd v. Bear Valley Vill.Apartments*, 980 P.2d 973, 975 (Colo.1999)………….7, 8

*United States Bank Nat'l Ass'n v. James*, Civil No. 09-84-P-JHR, 2010
WL 1416126, at *6 (D. Me. Apr. 5, 2010)…………………….……...…8

*Statutes*

Fed. R. Civ. P. 16(b)…..………………….…………………………………...…………13

Fed. R. Civ. P. 16(b)(4)…..……………………………………….…………………13

Fed. R. Civ. P. 26(a)(2)(C)(ii)……………………………………….………………….2

D.C. COLO. LCivR 16.1…………………………………………………...………13

*Treatises*

Advisory Committee Notes to 1993 Amendments to Fed. R.

Civ. P. 26(f)……………………………………………………….....8, 12

## I.    <u>INTRODUCTION</u>

Plaintiff seeks leave to Amend or Augment his Expert Witness Disclosures of October 28, 2016 to add Khyber Zaffarkhan, DO, FAAPMR ("Dr. Zaffarkhan") as an expert witness retained to provide expert testimony in support of Plaintiff's case, specifically evidence regarding future medical costs, physical therapy and required pain management.  Plaintiff timely and properly designated Dr. Zaffarkhan as a Rebuttal Expert Witness pursuant to Rule 26(a)(2) on January 17, 2017, but Defendants erroneously contend Dr. Zaffarkhan is providing untimely affirmative opinions regarding future medical expenses.

Defendants' motion ignores that Dr. Zaffarkhan's testimony refutes testimony and reports by Defendants' experts Dr. Bazaz (orthopaedics) and Dr. Rhodes (economist), with respect to their opinions on 1) the appropriate medical treatment for Mr. Bautista, and 2) the cost of Mr. Bautista's future anticipated medical services, specifically the cost of future shoulder surgery for injuries suffered by Mr. Bautista in the accident.

Accordingly, Plaintiff respectfully requests this Court deny Defendants' Motion to Strike, or alternatively, grant Plaintiff's Motion for Leave of Court to Amend or Augment his Expert Witness Disclosure, or other such relief as the Court deems appropriate.

1

## II.    DR. ZAFFARKHAN'S OPINIONS ARE PROPER AS REBUTTAL OPINIONS TO DEFENDANTS' EXPERTS DR. BAZAZ AND DR. RHODES

### A.    Standard for Appropriate Rebuttal Expert Witness Opinions

Rule 26(a)(2)(C)(ii) permits the admission of rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified" by an initial expert witness. *TC Sys. Inc., v. Town of Colonie, NY*, 213 F.Supp.2d 171, 179 (N.D.N.Y. 2002)

As cited by Defendants, a "rebuttal expert may testify only during the plaintiff's rebuttal case, and only if the defendant's corresponding expert actually testified regarding matters the rebuttal witnesses was designated to contradict. *Id*. at 5 (citing *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Hawaii 2008.)

### B.    Dr. Zaffarkhan's Opinions Rebut Those of Dr. Bazaz

On October 21, 2016, Plaintiff was seen by IME Doctor (and eventual Defendant expert witness) Rajesh Bazaz, M.D.  Even though Dr. Bazaz's report was completed on November 11, 2016, Defendants' counsel refused to provide the report until December 16, 2016 (i.e. the date of Defendant's continued expert designation). Despite Defendants contention of surprise and the allegation that this is newly claimed information, in his report, Dr. Bazaz opined that, "Down the road, it may be possible that Mr. Bautista may need a reverse total shoulder arthroplasty."  (See

2

Defendants' Exhibit F.")  As discussed below in Section III, this is the same information and opinion Plaintiff provided to Defendants as part of his Initial Disclosures.  Further, Dr. Bazaz opined that:

> [Plaintiff] did undergo appropriate postoperative physical therapy. Unfortunately, he   has continued difficulty in terms of pain, range of motion and weakness/function     deficits.  I would not recommend another rotator cuff repair.  Potential further     treatment may be necessary down the road.
> *Id.*

Upon receipt of Dr. Bazaz's report, Plaintiff determined that the scope of future treatment and care recommended by Dr. Bazaz was insufficient because it cut short the significance of future treatment that Mr. Bautista is in need of and would be required to undergo.  Despite receiving Defendants' disclosures just prior to the holiday period, Plaintiff timely retained and designated  Dr. Zaffarkhan to provide said necessary rebuttal testimony.  In direct response to Dr. Bazaz's opinion, Dr. Zaffarkhan opines:

> I have also reviewed Dr. Bazaz's report of October 21st, 2016. I do agree with most of this points, but I do believe Mr. Bautista will also so need a comprehensive pain management program including physical therapy, medication management and adaptive equipment. Such a program will cost around $12,000 per year. I would also recommend a functional capacity evaluation to see if he can continue his work duties and if he will need any level of attendant care. The cost of this test can range from $1,000 to $1,500. Other factors to consider is recovery from surgery. Recuperation can last 12 weeks and for the first 6 weeks, the patient will likely be restricted from driving.
> (See Defendants' Exhibit H.)

3

Defendant's motion ignores the totality of Dr. Zaffarkhan opinions and focuses on his opinions regarding future medical expenses only.   Thereby, Dr. Zaffarkhan provides proper and allowable rebuttal testimony.  However, and as discussed below, Plaintiff requests leave to amend its expert witness designations regarding all of the opinions offered by Dr. Zaffarkhan in his report.   Here, Dr. Zaffarkhan opinions were offered prior to Dr. Bazaz's deposition and thus relied entirely upon Dr. Bazaz's report.  Dr. Zaffarkhan opinions specifically contradict the incomplete facts and statements presented by in Dr. Bazaz's report.

### C.   Dr. Zaffarkhan's Opinions Rebut Those of Dr. Rhodes

On January 27, 2017, Plaintiff's counsel deposed, George R. Rhodes, Ph.D., Defendants' designated economist. (See Defendants' Exhibit E, p. 4.)  Dr. Rhodes testified at length on the issues of medical services, such as hospital care, surgical costs, physician costs, having an inflation rate that is either greater than or lower than the common inflation rate.  (See Exhibit A, p. 21, ln. 12 through  p.23 ln. 16.)  These costs, with respect to Mr. Bautista's anticipated total shoulder arthroplasty) are the same costs that Dr. Zaffarkhan provided his rebuttal opinions about in his report. (See Defendants' Exhibit H, p. 4-5.)  Dr. Rhodes in fact reviewed Dr. Zaffarkhan's report prior to his deposition (See Exhibit A, p. 27, lns. 12-18.)

Additionally, at Dr. Rhodes' deposition, Defendants' own counsel represented that he anticipates Dr. Rhodes providing additional opinions on Dr. Zaffrakhan's

report in the future. (See Exhibit A, p. 27, ln. 19 through p. 28, ln. 1.)  Plaintiff has no

objection to allowing Dr. Rhodes to provide further testimony or opinions regarding

these topics, should the Court allow Dr. Zaffarkhan's opinions.

### D.    Dr. Zaffarkhan's Opinions Should Not be Excluded or Stricken

Defendants accurately cited the applicable standard for evaluation of potential

exclusion of Dr. Zaffarkhan report:  "The 10th Circuit has articulated the following

factors to guide a court's discretion in evaluating whether late-disclosed evidence

should be stricken: "(1) the prejudice or surprise to the party against whom the

testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to

which introducing such testimony would disrupt the trial; and (4) the moving party's

bad faith or willfulness." *Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo.

2004)(quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d

985, 993 (10th Cir. 1999)).  Defendants' analysis of these factors is woefully deficient

because of the compelling factors behind supporting Plaintiff's position that Dr.

Zaffarkhan's opinions and report be admitted.

As discussed below in Section III, there is no prejudice or surprise as to the

information provided by Dr. Zaffarkhan: 1) parties have long known that Mr.

Bautista would require a surgery in the future and that he would require an

appropriate pain management program; and, 2) this surgery would likely be a reverse

total shoulder replacement and that this surgery would be performed at or near where

5

Mr. Bautista lives.  Plaintiff's treating physician, Dr. Chase, could not provide the cost of this surgery in approximately ten years, nor could he accurately testify to the costs today.  Dr. Bess, Plaintiff's expert, testified that he does not prepare pricing estimates himself and relies on third parties for this information.  This evidence does not pose any prejudice to Defendants; Defendants' own expert, Dr. Bazaz, agrees future surgery is a possibility, so this is not a surprise to Defendants.  Moreover, Plaintiff indicated in his Initial Disclosures of July 2016 that he would require future surgery.

Defendants have ample time to have Dr. Bazaz and Dr. Rhodes revise their reports to provide the anticipated costs of said surgery or to secure an appropriate rebuttal expert without objection, as the Court has discretion to allow Defendants to introduce a rebuttal expert as to appropriate pain management and cost of surgery.  In fact, Defendants continue to utilize medical, employment and insurance authorizations provided by Plaintiff to request Plaintiff's records from third parties.  This is evidence that even though the discovery deadline has passed, Defendants continue to gather additional records from third parties.

Nor would this information disrupt trial proceedings.  Trial has not been set and discovery has yet to be completed, discussed further in Section III.  Finally, there has been no evidence bad faith or willfulness in the non-disclosure of Dr. Zaffarkhan report or anticipated testimony.  Defendant's own position relies on conjecture and

6

speculation based on its interpretation of its delayed expert witness report.  Plaintiff has always maintained that the costs of his future surgery, pain management and physical therapy are proper for expert witness opinion, especially when these costs will not be incurred for approximately ten (10) years.

## III.  PLAINTIFF'S REQUEST TO AMEND IS SUBSTANTIALLY JUSTIFIED AND HARMLESS TO DEFENDANTS

If the Court accepts Defendants' position that Dr. Zaffarkhan expert testimony is improper rebuttal testimony, Plaintiff requests the Court utilize its discretion to allow the Plaintiff leave to Amend or Augment its Initial Expert Witness Disclosure of October 26, 2016 to allow inclusion of Dr. Zaffarkhan.

"A district court has broad discretion in determining whether a Rule 26 violation is justified or harmless." *Heartland Rehab. Serv., Inc. v. Mekjian*, No. 06-11769, 2007 WL 1266352, at *1 (E.D. Mich. May 1, 2007) (citing cases).  Moreover, Rule 37 dictates that a party be sanctioned for failure to comply with certain discovery deadlines by the preclusion of evidence or witnesses, unless the party's failure to comply is either substantially justified or harmless. *Berry v. Keltner,* 208 P.3d 247 (May 26, 2009), (citing *Todd v. Bear Valley Vill.Apartments*, 980 P.2d 973, 975 (Colo.1999)), *Camp Bird Colorado Inc. v. Bd. Of County Comm'rs.,* 215 P.3d 1277, 1291 (Colo.App.2009).    The *Todd* court further stated that even if the failure to timely disclose lacks substantial justification, it is inappropriate to preclude

7

the testimony if the late disclosure is harmless to the other party. *Todd* at 979. "[T]he inquiry is not whether the new evidence is potentially harmful to the opposing side's case. Instead, the question is whether the failure to disclose the evidence in a timely fashion will prejudice the opposing party by denying the party an adequate opportunity to defend against the evidence." *Todd* at 979.   The movant bears the burden of demonstrating that a late expert designation is either substantially justified or harmless. See, e.g., *United States Bank Nat'l Ass'n v. James*, Civil No. 09-84-P-JHR, 2010 WL 1416126, at *6 (D. Me. Apr. 5, 2010).

The court also has an independent responsibility for case management. "The desirability of some judicial control of discovery can hardly be doubted. Rule 16, as revised, requires that the court set a time for completion of discovery and authorizes various other orders affecting the scope, timing and extent of discovery and disclosures." See Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(f). *Cf. Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003) (the case management elements of Rule 16 are based on the "recognition that cases can move efficiently through the federal system only when courts take the initiative to impose and enforce deadlines").

Despite Defendant's contentions, Plaintiff has always disclosed the fact that he would require shoulder replacement in the future.  In Plaintiff's Initial Disclosures dated July 26, 2016, Plaintiff disclosed: "Mr. Bautista will also testifying[sic]

8

regarding the impact and damages and losses suffered due to the massive retracted tear of the rotator cuff which caused him to have surgery *and will require surgery in the future…*" (Emphasis Added.) (See Defendant's Exhibit A, p. 2.)[1]  Simply put, the fact that Mr. Bautista will require a surgery in the future is not a secret and has always been fully represented to Defendants; the only unknown was the cost of said surgery in the future.  The expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Sherrod v. Lingle,* 223 F.3d 605, 613 (7th Cir. 2000).  See also *Cf. Basaldu v. Goodrich Corp.*, 2009 WL1160915, *2 (E.D. Tenn. 2009) ("The purpose of the modern civil discovery rules is to get all of the proverbial cards on the table in advance of trial.")   As discussed above, even Defendants' own experts knew that this surgery was a possibility as early as October 2016, therefore, summarily dismissing Defendants' contentions that this information is somehow an ambush or surprise.

Moreover, the true cost of a reverse shoulder replacement surgery was unknown to Plaintiff at the time of his initial disclosures.  *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 2007 WL 4051179, *2 (S.D.N.Y. 2007) ("By requiring disclosure of all relevant information, the discovery rules allow ultimate

---

[1] Plaintiff provided Defendants' counsel this information in January 2016 at a mediation, prior to initiating litigation!

resolution of disputed facts to be based *on full and accurate understanding of true facts*.") (emphasis in original). Therefore, it is appropriate for an expert witness to provide testimony regarding the costs of a reverse shoulder replacement surgery in the future (in this case, when Plaintiff is sixty (60) years of age, or in ten years from now in the region that Plaintiff resides .) Plaintiff anticipated that his expert, Dr. Bess, would be able to provide an estimate of said costs; he could not do so properly because he does not practice where Plaintiff lives. Moreover, Dr. Bess deferred to his staff with respect to costs of medical services who get their information from third parties:

> Q. You have given an estimate of cost for a total shoulder which is attached to Exhibit 1.· It's not dated, but it says, Surgery quote for Celedonio – I guess it means Celedonio Bautista.· It's got your name on it, and it has a total $28,306; is that correct?
> A. That's what it says. I didn't prepare that document, however.
> Q. Who prepared that?
> A. My staff did.
> Q. Okay.
> A. And the quotes are obtained from my billing company.
> Q. Does your clinic, your practice, do they do total shoulders?
> A. This is for arthroscopy and rotator cuff repair, not for total shoulder replacement.
> Q. I'm sorry.· I misread it. Okay. This isn't a total shoulder?
> A. Correct.
> (See Exhibit B, Deposition of Dr. Bess, p. 34, lns. 4-22.)

Neither could Dr. Chase provide such an opinion, Plaintiff's surgeon, without guessing, as to the costs of the surgery and therapy post surgery:

> Q.· Okay.· What are the typical costs of a shoulder replacement surgery?
> A. · Gosh, um I would just be guesstimating….

10

(See Exhibit C, Deposition of Dr. Chase; p. 127, lns. 10-12.)

The deficiencies in opinions offered by Dr. Bess and Dr. Chase were only discovered in January 2017, long after Plaintiff made its Initial Disclosures. Accordingly, Plaintiff appropriately and timely requests leave to allow for inclusion of Dr. Zaffarkhan testimony as set forth in his report.

## IV.   THERE IS NO PRJEUDICE TO DEFENDANTS BECAUSE EXPERT DISCOVERY HAS YET TO BE COMPLETED

Even though the Discovery Completion deadline was on January 27, 2017, the parties have stipulated to conduct several expert witness depositions after this deadline due to unavailability of Defendants' experts prior to the deadline. Accordingly, the parties can stipulate to dates for conducting Dr. Zaffarkhan deposition and to any rebuttal witness Defendants' designate without prejudice to the parties or delay to this matter.  Defendants' counsel even conceded that they would anticipate Dr. Rhodes providing a rebuttal opinion to Dr. Zaffarkhan's report, *supra.* Trial date has not been set and the trial setting conference in this case is on May 3, 2017, allowing for significant time to conduct further discovery regarding the costs of future medical expenses.  This Motion marks the first request for amending expert witness disclosures or deadlines by Plaintiff.

Furthermore, it is important to note that the deadline to complete expert witness discovery was limited due to the unilateral actions of the Defendants only.  It was Defendants who sought and received an extension to disclosure its own expert

11

witnesses to December 16, 2016 (see Documents [45] and [50], wherein the Court continued Defendants' Expert Witness Disclosure Deadline from November 28, 2016 to December 16, 2016.)  However, the Court did not extend the Discovery Completion deadline at that time, and thus, the shortened time frame to complete Defendants' expert discovery was caused, again, only by the Defendants.

The Court has the discretion and ability to revise these deadlines to allow for Plaintiff's disclosure of Dr. Zaffarkhan.  "The desirability of some judicial control of discovery can hardly be doubted. Rule 16, as revised, requires that the court set a time for completion of discovery and authorizes various other orders affecting the scope, timing and extent of discovery and disclosures." See Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(f). Cf. *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003) (the case management elements of Rule 16 are based on the "recognition that cases can move efficiently through the federal system only when courts take the initiative to impose and enforce deadlines"). As the Tenth Circuit has acknowledged,

> While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial . . . [T]here can be no doubt that subsection (f), added as part of the 1983 amendments to Rule 16 indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior . . . but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.

> *Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1555 (10th Cir. 1996), quoting *Matter of Sanction of Baker,* 744 F.2d 1438, 1440 (10th Cir. 1984)

As this court noted in *Cassirer v. San Miguel County Board of County Commissioners,* 2009 WL 1844326, 5-6 (D. Colo. June 23, 2009), Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." *See* Fed.R.Civ.P. 16(b)(4). *See also* D.C. COLO. LCivR 16.1 ("The schedule established by a scheduling order shall not be modified except upon a showing of good cause and by leave of court").  Here, good cause exists to modify the scheduling order to allow Plaintiff to make an amended expert disclosure because, as demonstrated above, Plaintiff did not know its experts or treating physicians were unable to provide testimony regarding the cost of future medical treatment until after it made its expert witness disclosures in October 2016.  Plaintiff timely moved to amend its designation after Defendants addressed this issue but only after the depositions of Dr. Chase and Dr. Bess were completed.  Plaintiff diligently and timely brings this issue before the Court, and prior to the motion cut-off deadline. As shown herein, even if Dr. Zaffarkhan testimony is deemed improper rebuttal testimony, Plaintiff has demonstrated good cause for leave to amend its designation.

## V.    <u>CONCLUSION</u>

Plaintiff respectfully request the Court GRANT its Motion for Leave to Augment its Expert Witness Disclosure to include Dr. Zaffarkhan and allow Defendants time to seek a rebuttal witness to Dr. Zaffarkhan testimony or additional time for its current experts to review Dr. Zaffarkhan's reports or testimony.  In the alternative, Plaintiff respectfully requests the Court DENY Defendant's Motion to Strike Dr. Zaffarkhan Rebuttal Expert Testimony, along with any further relief that the Court deems just and proper.

Respectfully submitted this 10th day of February 2017.

s/ *Derek S. Chaiken*
**Derek S. Chaiken**
Abir Cohen Treyzon Salo, LLP
1901 Avenue of the Stars
Suite 935
Los Angeles, California 90067
Telephone: (424) 288-4367
FAX: (424) 288-4368
E-mail: dchaiken@actslaw.com
Attorney for Plaintiff
Celedonio Bautista

14