IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01086-NYW

CELEDONIO BAUTISTA, an individual,

    Plaintiff,

v.

MVT SERVICES, LLC, a Limited Liability Company, d/b/a Mesilla Valley Transportation Inc., and
THOMAS M. ESTRADA, an individual,

    Defendants.

## ORDER ON MOTIONS TO EXCLUDE EXPERT

Magistrate Judge Nina Y. Wang

    This matter is before the court on three pretrial motions:

    (1)    Defendants' Motion to Exclude Expert Testimony of Robert Bess, M.D., Regarding Future Medical Treatment ("Motion to Exclude Dr. Bess") [#99, filed July 18, 2017];

    (2)    Defendants' Motion to Exclude or Limit Expert testimony of Ann Stodola, P.E. ("Motion to Exclude Ms. Stodola") [#100, filed July 18, 2017]; and

    (3)    Defendants' Motion to Exclude or Limit Expert Testimony of Roger Allen ("Motion to Exclude Mr. Allen") [#101, filed July 18, 2017].

    The Motions are before the undersigned pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated July 22, 2016 [#30]. This court has reviewed the Motions and the associated briefs, the entire docket, and the applicable case law. In addition, the court held an evidentiary hearing on November 15, 2017, at which it considered the foundational issues raised by the Motion to Exclude Ms. Stodola. For the reasons set forth below, this court respectfully

GRANTS IN PART and DENIES IN PART the Motion to Exclude Dr. Bess; GRANTS IN PART AND DENIES IN PART the Motion to Exclude Ms. Stodola; and GRANTS IN PART and DENIES IN PART the Motion to Exclude Mr. Allen.

## BACKGROUND

This case arises from a motor vehicle collision that occurred on January 30, 2014, when a tractor-trailer truck driven by Defendant Thomas M. Estrada ("Defendant Estrada"), and owned by Defendant MVT Services, LLC d/b/a Mesilla Valley Transportation, Inc. (collectively, "MVT"), struck the tractor-trailer truck in which Plaintiff Celedonio Bautista ("Plaintiff" or "Mr. Bautista") was riding. [#5]. Mr. Bautista contends that Mr. Estrada was traveling at an unsafe speed for the winter conditions and caused the collision. [*Id.* at ¶ 13]. Plaintiff alleges that as a result of the collision, he was thrown from his sleeper bed in the tractor-trailer and has suffered "serious and severe personal injuries, including … [suffering] a massive retracted tear of the rotator cuff which forced [him] to have surgery and will require further surgery in the future due to this collision." [*Id.* at ¶¶ 15, 22]. Mr. Bautista originally filed this action in District Court for Boulder County, Colorado on April 6, 2016. [*Id.* at 1]. Defendants removed the case to the United States District Court on May 12, 2016. [#1].

In his Complaint, Mr. Bautista asserts common law claims for negligence and negligence *per se* against Defendants and a claim for negligent entrustment against MVT.[1] *See* [#5]. On February 27, 2017, Defendants filed a Motion for Partial Summary Judgment as to the negligent entrustment claim and, on March 7 2017, supplemented the Motion with recently issued authority from the Colorado Supreme Court. *See* [#82, #83, #85]. The Parties then stipulated to

---

[1] Plaintiff originally named "Does 1-10" as Defendants. *See* [#5]. On May 18, 2017, after the close of discovery and the Final Pretrial Conference, the court issued an Order to Show Cause as to why Does 1-10 should not be dismissed and set a deadline for May 25, 2017 for Plaintiff to respond. [#94]. Plaintiff did not respond, and on June 1, 2017, the court dismissed Does 1-10. [#96].

2

the dismissal of the claim for negligent entrustment, leaving only the claims for negligence and negligence *per se* against both Defendants. *See* [#88, #89]. Mr. Bautista seeks both economic and non-economic damages, including past and future medical bills and healthcare costs, loss of future earnings, loss of earning capacity, loss of past and future benefits, and loss of household services, as well as for pain and suffering and emotional distress. He also seeks prejudgment and postjudgment interest and costs. [#5 at 8]. The court entered a Final Pretrial Order on May 3, 2017, and a Trial Preparation Order on May 19, 2017. A five day jury trial is set to commence on January 22, 2018. *See* [#95].

On July 18, 2017, Defendants filed three separate motions to exclude expert testimony offered by three of Plaintiff's designated experts: Robert Bess, M.D. ("Dr. Bess"), Plaintiff's retained orthopedic surgeon [#99]; Anne Stodola, P.E. ("Ms. Stodola"), Plaintiff's retained professional engineer [#100]; and Roger Allen ("Mr. Allen"), Plaintiff's retained trucking industry expert [#101]. Plaintiff filed responses to each of the respective motions, *see* [#107, #108, #109], and Defendants filed replies, *see* [#110, #112, #111]. The court then scheduled an evidentiary hearing on the Motions that occurred on November 27, 2017 [#133] and December 4, 2017 [#138]. At the respective hearings, each of the experts testified, but no documentary evidence was admitted. The court took the matters under consideration and now turns to consider each separately.

## LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence permits as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

As noted by the Advisory Committee when the Rule was promulgated, "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge." Fed. R. Evid. 702, advisory committee's note to 1937 rule.

It is well established that trial courts are charged with gatekeeper responsibility of ensuring expert testimony or evidence is admitted only if such is relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–152 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that gatekeeper function, courts within the Tenth Circuit conduct a two-part inquiry. The court first considers whether the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline by conducting a preliminary inquiry into the expert's qualifications and the admissibility of the proffered evidence. In other words, the court asks whether the reasoning or methodology underlying the testimony is valid. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citing *Butler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232–33 (10th Cir. 2004)). The court then considers whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder.[2] *See id.* The party offering the expert opinion bears the

---

[2] Thus, contrary to Plaintiff's repeated argument that Defendants' Motions impermissibly raise issues under Rules 401 and 403 of the Federal Rules of Evidence, *see e.g.* [#107 at 2; #108 at 2; #109 at 2], part of the court's inquiry under *Daubert* is to determine whether the proposed testimony is relevant, i.e., whether it "logically advances a material aspect of the proposing party's case." *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1223 (D. Colo. 1998) (citing *Daubert*, 43 F.3d at 1315). Nevertheless, the court remains mindful in its analysis that the

4

burden of establishing its admissibility, including the foundational requirements, by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).

"Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). To that end, courts consider the following non-exhaustive factors in analyzing whether a particular expert opinion meets the requirements of Rule 702, *Daubert*, and their progeny:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Id.* The court's analysis is opinion-centric, rather than expert-centric. *See United States v. Nacchio*, 608 F. Supp. 2d 1237, 1251 (D. Colo. 2009).

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure define the process by which the court must discharge its gatekeeper duties, and the trial court's discretion in admitting or excluding evidence under *Daubert* is broad. *Dodge*, 328 F.3d at 1223. If a party challenges the foundational sufficiency of an expert's opinion, the court must make factual findings and preferably after an evidentiary hearing. *Id.*; *but cf. United States v. Chapman,* 839 F.3d 1232, 1239 (10th Cir. 2016) ("Tenth Circuit case law does not mandate that a hearing be held.") (citation and quotation marks omitted)). In the even the court holds such a hearing, it should focus on the expert's principles and methodology, rather than on the conclusions generated or their weight or persuasiveness. *Daubert*, 509 U.S. at 595; *Crabbe*, 556 F. Supp. 2d at 1220.

---

exclusion of otherwise admissible evidence under Rule 403 should be used sparingly. *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010).

## ANALYSIS

### I. Motion to Exclude Dr. Bess

Defendants seek to exclude Dr. Bess from testifying that additional surgeries on Plaintiff's shoulder (either a second tendon repair or a reverse shoulder replacement) are necessary. *See* [#99]. Defendants assert that Dr. Bess's opinion regarding future surgeries is dependent on the assessment of Mr. Bautista's treating physician, Jeffrey Chase, M.D., and that Dr. Chase testified in his deposition that a second tendon repair would not be appropriate. *See* [*id.* at 3]. Additionally, Dr. Bess admitted that the need for and appropriateness of a second surgery is "up in the air." [*Id.* at 5]. Accordingly, Defendants contend that any opinion of Dr. Bess that Plaintiff will need future surgery is speculative. In Response, Plaintiff argues that Defendants conflate the requirements of Rule 403 and Rule 702, and fail to challenge Dr. Bess's medical expertise. [#107 at 1-2]. Plaintiff argues that Dr. Bess's opinions are correct and supported by the independent medical examination and review of Plaintiff's medical records. [*Id.* at 4]. In Reply, Defendants urge the court to preclude Dr. Bess's opinions as "cumulative, unnecessary, and speculative." [#110].

The court concurs that Defendants failed to challenge Dr. Bess's qualifications in the Motion to Exclude, and rather stipulated to his qualifications and training during the evidentiary hearing. Additionally, Defendants do not appear to contest Dr. Bess's methodology regarding his independent medical examination or review of medical records of treating physicians. The court thus turns to the issues of whether Dr. Bess's opinion is based upon reliable facts and data, and whether his opinion regarding future treatment is so speculative that the court must exclude it.

Courts have routinely permitted physicians to render opinions regarding a plaintiff's future progress, including the need for future treatment. *Marland v. Asplundh Tree Expert Co.*, No. 1:14-CV-40 TS, 2016 WL 7447840, at *2 (D. Utah Dec. 27, 2016); *Dominguez v. Lubbock*, No. CIV-11-1347-R, 2013 WL 5815730, at *2 (W.D. Okla. Feb. 1, 2013) (collecting cases). During the evidentiary hearing, Dr. Bess testified that he would rely upon Dr. Chase's assessment of the appropriateness of each surgery because he himself had not visualized the physical status of Mr. Bautista's shoulder. In addition, he testified that a determination that future surgery was recommended or necessary would be dependent upon an examination that had yet to occur. The unrebutted record demonstrates that Dr. Chase testified that a subsequent tendon repair is not appropriate, and Dr. Bess has repeatedly testified that he would defer to Dr. Chase as the treating physician. *See* [#99-2 at 53:15-23].[3] Therefore, while this court finds that Dr. Bess can testify generally as to the possibility of a future reverse shoulder replacement for Mr. Bautista, his own testimony, and that of Dr. Chase, precludes him from testifying that a future tendon repair surgery is a viable option, or that a reverse shoulder replacement surgery is a medical certainty, or even recommended at this time. *See Longoria v. Khachatryan*, No. 14-CV-70-TLW, 2016 WL 5746221, at *3 (N.D. Okla. Sept. 30, 2016) (finding that expert was qualified to testify generally about future treatment, but that expert's own report limited his testimony concerning that treatment).

To the extent Defendants contend that Dr. Bess's testimony is cumulative and unnecessary, this court notes that Plaintiff has listed his treating physician, Dr. Chase, as a may call witness. [#92 at 8]. While not altogether clear to this court whether or how Plaintiff intends

---

[3] When citing to deposition transcripts, this court refers to the docket number assigned by the District's Electronic Court Filing system, but the original page and line numbers as provided by the transcription service for consistency purposes.

7

to admit evidence of Dr. Chase's treatment of him, the undersigned cannot predetermine issues of cumulativeness and necessity outside the context of trial.

## II.     Motion to Exclude Ms. Stodola

*Reconstruction Opinions.*   Defendants first move to exclude Ms. Stodola's accident reconstruction opinions, arguing that the opinions are based on flawed conclusions about the location of the vehicles prior to and at the time of the collision, and that they constitute "unreliable speculation that is beyond her area of expertise."  [#100 at 9].  Defendants specifically contend that Ms. Stodola's conclusion that Plaintiff's vehicle was located in the right hand lane of Interstate 25 ("I-25") traveling at a rate of speed of 35 miles per hour is flawed, because she relies on "her subjective interpretation of the police report and Mr. Estrada's alleged statement to the police."  [#100 at 6].  Ms. Stodola testified during her deposition and at the evidentiary hearing that she lacked physical evidence, due to the heavy snowfall, regarding the point of impact between the two vehicles.  *See, e.g.*, [#100-4 at 92:24-93:2, 85:7-15].  However, she also explained during her deposition and at the evidentiary hearing that she had formulated her opinion in reliance on the Colorado State Patrol Traffic Accident Report, which was compiled from the police investigation at the scene of the collision.  The Accident Report indicates that Defendants' vehicle was traveling in the left hand side of the road, and Plaintiff's vehicle was traveling on the right hand side of the road.  Ms. Stodola also relied on a translation of Mr. Estrada's statement, contained in the police report, that he had been "driving approximately 50 miles per hour," but that the road was downhill "so my truck reached 55 miles per hour…. Suddenly I saw flashing red lights flashing, but I thought they were in the shoulder. At the same time I begun reducing my speed, once I was closer I saw the trailer in the middle of the road and not in the shoulder."  [#100-1 at 8].  The Parties vigorously dispute whether

Plaintiff's vehicle was over the center "skip line," and which lane each respective vehicle occupied at the point of impact.

As an initial matter, the court finds that Ms. Stodola, who holds a Masters of Science in Mechanical Engineering and has additional training and experience with accident reconstruction, is qualified as a professional engineer to provide technical or specialized knowledge in interpreting the physical findings of the collision so as to assist the jury in understanding the issues before it.[4] While Defendants take issue with Ms. Stodola's failure to "perform calculations" or create a "computerized simulation," this court finds that Ms. Stodola adequately described the methodology she used in examining the police report, the witness statement contained therein, photographs, and relative positions of the vehicles after they came to rest. [#100-1]. Her report and testimony reflect that she relied upon the materials she reviewed and "the application of accepted physics, engineering and reconstruction principles." [*Id.* at 11]. I find that her methodology is reliable; indeed, in the context Rule 702, courts within the Tenth Circuit and beyond have accepted the reconstruction of accidents based on the expert's review of police reports, photographs of the scene, and witness statements. *North v. Ford Motor Co.*, 505 F. Supp. 2d 1113, 1118 (D. Utah 2007); *Miles v. Gen. Motors Corp.*, 262 F.3d 720, 724 (8th Cir. 2001); *Paine v. Johnson*, No. 06C 3173, 2010 WL 749857 (N.D. Ill. Feb. 25, 2010). And, as the Tenth Circuit has held, the admissibility of an expert's analysis is not dependent on independent testing or eyewitness accounts, and Defendants' challenges to the factual basis for the opinions

---

[4] Ms. Stodola represented at the evidentiary hearing that she has testified in court approximately 138 times, and counsel for Plaintiff suggested that the number of times Ms. Stodola has been qualified to testify as an expert pursuant to Rule 702 is somehow relevant to the court's inquiry here. This court respectfully disagrees. The court's evaluation with respect to the instant Motion is guided by the reliability of the methodology and principles Ms. Stodola applied in reaching her expert opinions for this case alone.

go to the weight, rather than the admissibility, of the opinions. *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 652-54 (10th Cir. 1991).

Ms. Stodola also opined and testified that the rotation and angles of rest and the damage to the various vehicle components reflected in the photographs, as well as aerial imagery taken five months after the collision, support her opinions regarding reconstruction of the collision.[5] Such opinions regarding the rotation and angles of rest appear susceptible to testing, that is, to the extent Ms. Stodola's opinions are not borne out by mechanic engineering or math, this court expects that Defendants would have identified any specific scientific flaws. Defendants asserted no such argument in the Motion to Exclude, nor did they raise any such argument with Ms. Stodola during the evidentiary hearing.

It is clear that Defendants do not agree with Ms. Stodola's assumptions or conclusions, but that dispute is not a proper basis for exclusion under Rule 702. *Davies v. City of Lakewood*, No. 14-CV-01285-RBJ, 2016 WL 614434, at *10 (D. Colo. Feb. 16, 2016) (noting that disagreement with an expert's opinion does not mean that the opinion is not "reliable" within the meaning of Rule 702). And, while Rule 702 dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject, *United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir. 1994), it is clear to the court that there is a material dispute as to how or why this collision occurred and that specialized knowledge

---

[5] Rule 703 specifically contemplates that evidence upon which experts rely to render their opinions need not be admissible if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject. Fed. R. Evid. 703. This court finds that the case law indicates that accident reconstruction experts routinely rely upon police reports and photographs from the scene of an accident in rendering their opinions. The issue of whether the specific underlying facts and data will ultimately be admitted at trial is not appropriately decided here, and Rule 703 permits the expert to disclose such inadmissible facts and data "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

would be helpful to the jury in its understanding of the evidence presented, particularly considering that the point of impact is undisputedly unknown. Finally, the court finds that any risk of prejudice to Defendants may be adequately addressed through vigorous cross-examination and the testimony of Defendants' own expert. Accordingly, this court concludes that Defendants' objections to Ms. Stodola's reconstruction opinions do not preclude their admissibility.

*Texas Commercial Drivers' Handbook.* The court now turns to Defendants' arguments regarding Ms. Stodola's use of the Texas Commercial Drivers' Handbook. *See* [#100 at 10-11]. Ms. Stodola references the Texas Commercial Drivers' Handbook to offer opinions regarding slippery surfaces and the need to adjust speed to road conditions. *See* [#100-1 at 10]. At the evidentiary hearing, counsel for Defendants argued that Plaintiff had waived his ability to offer any such opinions because he did not offer additional evidence from Ms. Stodola at that time regarding admissibility. Defense counsel cited no law in support of his argument, and this court finds no basis in either the Rule or the case law interpreting *Daubert* to suggest that a waiver occurred. Therefore, the court declines to determine the issue on the basis of waiver, and rather turns to consider Defendants' substantive arguments.

Defendants argue that the Texas Commercial Drivers' Handbook is irrelevant and has no probative value. [#100 at 11]. Defendants further contend that any probative value is outweighed by the danger of unfair prejudice. [*Id.*]. In support of their arguments, Defendants rely upon *Sweeting v. Eckhoff*, Case No. 2006 CV 5726, 2010 Colo. Dist. LEXIS 134, *2-*3 (Colo. Dist. Ct. Feb. 7, 2010), from the Arapahoe County District Court. Plaintiff responds that "[c]ommercial operation of tractor trailers and tractor doubles" is not knowledge that is common to a lay person juror, and "Defendants have cited no reported authority that would preclude this

court from allowing reference to the [Texas Commercial Drivers' Handbook]." [#108 at 8]. Plaintiff further argues that Ms. Stodola "believes that the [Texas Commercial Drivers' Handbook] accurately referred to Law when making her conclusion that Mr. Estrada attempted to pass the slower moving vehicle contrary to the instruction in the Texas CDL Handbook." [*Id.*].

To recover on a negligence claim, the plaintiff must establish the existence of a legal duty on the part of the defendant, a breach of that duty, causation, and damages. *See United Blood Servs. v. Quintana*, 827 P.2d 5009 (Colo. 1992). "A party may recover under a claim of negligence *per se* if it is established that the defendant violated the statutory standard and the violation was the proximate cause of the injuries sustained." *Lombard v. Colorado Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 573 (Colo. 2008). Plaintiff does not dispute that Colorado law imposes no statutory duty on a licensed driver to comply with the Colorado Driver Handbook. *Sweeting*, 2010 Colo. Dist. LEXIS 134, at *2. Rather, Plaintiff simply asserts that no binding authority precludes Ms. Stodola's opinion, which is that the handbook accurately reflects the law.

This court is persuaded that it should preclude Ms. Stodola's conclusions that rely upon the Texas Commercial Drivers' Handbook; and finds that, to the extent Plaintiff offers Ms. Stodola for opinions regarding the "commercial operation of tractor trailers and tractor doubles," those opinions fall outside of her area of expertise. *See Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir.1991) (observing that an expert must testify "within the reasonable confines of his subject area and cannot render expert opinions on an entirely different field or discipline"). In addition, to the extent Plaintiff seeks to introduce Ms. Stodola's opinions regarding whether the Texas Commercial Drivers' Handbook accurately reflects the law

12

applicable to this case, such testimony is not only outside of Ms. Stodola's area of expertise, but impermissibly encroaches on the trial court's role as the final arbiter of the law and its application and the jury's role to determine the ultimate issue of liability. *See Specht v. Jensen*, 853 F.2d 805, 809-10 (10th Cir. 1988) (holding that expert testimony that attempts to define the legal parameters within which the jury must exercise its fact-finding function is improper). As a result, Ms. Stodola's opinions deriving from the Texas Commercial Drivers' Handbook are excluded.

***Movement by and Injuries to Mr. Bautista.*** Finally, this court touches briefly upon Ms. Stodola's opinion that the subsequent injuries suffered by Mr. Bautista were caused by the collision and Mr. Estrada. [#100-1 at 10-11]. Based on defense counsel's examination of Ms. Stodola at the evidentiary hearing, it appears that Plaintiff is not offering Ms. Stodola's testimony for the purpose of asserting opinions regarding a biomechanics analysis or his own movement. However, Plaintiff includes no such concession in his Response, which asserts that "[b]y applying mechanical engineering principals [sic] the conditional data and facts collected and provided to Ms. Stodola, she concluded consistent with Fed [sic] R. Evid. 702, that Mr. Bautista's movement was in response to the impacts to the SBI trailers and the travel off the paved road." [#108 at 6, citing [#100-1 at 11]. Ms. Stodola is not qualified to testify as to biomechanics, and she has not identified what, if any, methodology she employed to conclude that Mr. Bautista's movement was consistent with the collision, or that Mr. Bautista's injuries were proximately caused by the collision. To the extent Plaintiff seeks to have Ms. Stodola opine about the cause of his injuries or the consistency of those injuries with the collision, such opinions are excluded as unreliable and speculative.

### III. Motion to Exclude Mr. Allen

Finally, Plaintiff offers Mr. Allen as an expert in the trucking industry to testify as to his opinions regarding the following: circumstances of the collision, [#101-1 at 3]; MVT's application of and compliance with the Federal Motor Carrier Safety Regulations, including issues related to the duty status of Mr. Estrada, [*id.* at 3-44]; Mr. Estrada's compliance with the Model MDL Manual, [*id.* at 5-9]; and MVT's post-accident investigation, [#101-1 at 9-11]. Defendants seek to exclude Mr. Allen's opinions regarding (1) how the accident occurred; (2) background information concerning and alleged legal obligations of MVT; (3) equipment inspections; (4) compliance with the Model Commercial Motor Vehicle Handbook; (5) opinions regarding MVT's post-accident conduct; and (6) legal conclusions that Mr. Estrada was negligent and caused the accident. [#101 at 2-3].

As an initial matter, this court finds that there are no direct claims asserted against MVT. [#88]. Instead, MVT may be vicariously liable for Mr. Estrada's negligence or negligence per se. In *Ferrer v. Okbamicael*, 390 P.3d 836 (Colo. 2017), the Colorado Supreme Court determined that an employer's admission of vicarious liability for negligence of its employee precluded direct negligence claims against the employer, including claims for negligent entrustment. *Id.* Despite his argument, Plaintiff cites no authority, and this court is aware of none, to support the proposition that an employer's actions are probative of whether an employee acted negligently in a particular incident. Therefore, any evidence of MVT's failure to comply with any standard, including the Federal Motor Carrier Safety Regulations ("FMCSR"), is simply not relevant to the issue of whether Mr. Estrada acted negligently in operating a tractor-trailer that struck the tractor-trailer that Mr. Bautista occupied. In addition, the presentation of

any such evidence to a jury tasked with weighing negligence and negligence *per se* claims with respect to Mr. Estrada poses a significant risk of confusing that jury. Plaintiff's arguments fail to articulate the relevance of these proffered opinions, and his arguments that the court need not mind relevance and prejudice in considering the propriety of Mr. Allen's opinions are misplaced. *See* [#109 at 8]. Accordingly, the court precludes Mr. Allen from offering opinions regarding the following: background information concerning and alleged legal obligations of MVT, [#101-1 at 3]; MVT's post-accident investigation, [*id.* at 9]; and MVT's obligation to hire "safe and prudent drivers and train all their drivers in compliance with both State and Federal Regulations," [*id.* at 12]. *Cf. Asbury v. MNT, Inc.*, Case No. 120252-KG/RHS, 2014 WL 6674475, *11, *13 (D.N.M. Aug. 6, 2014) (excluding Mr. Allen's testimony regarding post-accident conduct as unduly prejudicial or irrelevant).

This court similarly finds as irrelevant Mr. Allen's opinion that Mr. Estrada failed to comply with the FMCSR regarding vehicle inspections. Plaintiff does not claim negligence on the theory that Mr. Estrada failed to comply with a vehicle inspection requirement or that any failure to do so contributed to the collision, and Mr. Estrada asserts no defense associated with equipment failure. *See* [#5, #13, #92]. Instead, as Mr. Allen testified at his deposition, his opinion is that driver error caused the collision. *See* [#109-1 at 74:21-24]. Again, Plaintiff articulates no explanation as to how Mr. Allen's opinion regarding vehicle inspections renders a fact of consequence to any claim or defense more or less likely. *See* Fed. R. Evid. 401. Therefore, the court precludes from trial any opinions regarding the failure to comply with regulations governing vehicle inspections.

The court now turns to Defendants' objections to Mr. Allen's opinions about the occurrence of the accident, the cause of the accident, and the fault of Mr. Estrada. While

15

Defendants characterize Mr. Allen's description of the accident as "accident reconstruction," [#101 at 6-9], this court finds that Mr. Allen's descriptions are more properly construed as factual assumptions. *See* [#101-1 at 3]. As with Ms. Stodola, Mr. Allen can rely on the Colorado State Patrol Accident Report; indeed, it is clear from his report that he is not engaging in a separate reconstruction of the accident, but is quoting from the Accident Report itself. *See* [*id.*]. Though the Accident Report might otherwise be inadmissible, Mr. Allen may rely upon it as it appears that police reports are routinely used and considered by experts to provide factual background, or even to render opinions regarding causation. Whether Mr. Allen or Ms. Stodola may ultimately testify as to the contents of the Accident Report is a matter reserved for trial. *See* Fed. R. Evid. 703. Defendants' objections to Mr. Allen's opinion regarding how the accident occurred goes to the weight and not the admissibility of the opinion and Defendants' concerns are properly addressed through cross-examination. *See Dodge*, 328 F.3d at 1222 (observing that expert opinions must be based on facts which enable them to express a reasonably accurate conclusion, but that there need not be "absolute certainty").

This court also respectfully rejects Defendants' objections to Mr. Allen's reliance of the Model Commercial Drivers' Manual, so long as Mr. Allen relies on the Manual for indicia of the accepted standards of the trucking industry and not as authority for legal requirements. *See* [#101 at 13-15; #101 at 5-9]. Such industry standards are relevant to the jury's assessment of negligence, and this court is persuaded that an average layperson does not have common knowledge of the driving standards applicable to commercial truck drivers. However, Mr. Allen is not permitted to testify that the Model Commercial Drivers Manual has been incorporated into law, as such statement is neither accurate nor within his area of expertise.[6] *See Sweeting,* 2010

---

[6] It does not appear that Defendants are specifically challenging Mr. Allen's opinion regarding the application of § 392.14 of the FMCSR, but instead argue generally that Mr. Allen should be

Colo. Dist. LEXIS 134, at *2; *Ashike v. Mullen Crane & Transp., Inc.,* No. 2:12CV11DAK, 2014 WL 3640735, at *5 (D. Utah July 23, 2014) (precluding Mr. Allen's testimony on the Utah Trucking Guide when such guide has no application in determining defendant's liability). Finally, this court finds that Mr. Allen's experience and qualifications render his opinions regarding Mr. Estrada's driving sufficiently reliable for the purposes of Rule 702, and Defendants' criticism go toward weight, rather than admissibility. *See Asbury*, 2014 WL 6674475, at *7.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Defendants' Motion to Exclude Expert Testimony of Robert Bess, M.D., Regarding Future Medical Treatment [#99] is **GRANTED IN PART and DENIED IN PART**;

(2) Defendants' Motion to Exclude or Limit Expert Testimony of Ann Stodola, P.E. [#100] is **GRANTED IN PART and DENIED IN PART**; and

(3) Defendants' Motion to Exclude or Limit Expert Testimony of Roger Allen [#101] is **GRANTED IN PART and DENIED IN PART**.

DATED: December 7, 2017          BY THE COURT:

                                 s/ Nina Y. Wang
                                 United States Magistrate Judge

---

precluded from testifying regarding "legal conclusions." [#101 at 16-17]. Mr. Allen's testimony regarding the application of § 392.14 is relevant to both the negligence and negligence *per se* claims, and Mr. Allen is not testifying to a legal conclusion when he opines that "[w]ith six inches of snow and ice, Mr. Estrada should have slowed to a crawl to travel in these conditions until he could find a safe place to stop until the weather and the road conditions improved." [#101-1 at 8].